
advance
Funding With Flexibility

# FACTORING AND SECURITY AGREEMENT

THIS FACTORING AND SECURITY AGREEMENT is made as of **August 30, 2007** by and between **Eagle Personnel, Inc., an Illinois Corporation** (hereinafter referred to as "Seller") and **Advance Payroll Funding Ltd.** (hereinafter referred to as "Purchaser")

1. **Definitions and Index to Definitions**   The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code:

   1.1 "Account" means a right to payment of a monetary obligation based upon Seller's ordinary course of business.

   1.2 "Accounting Period" is the period beginning Monday and ending Sunday during each week of the within Agreement

   1.3 "Administrative Fee" is the "Administrative Fee Percentage" (as set forth in Exhibit "B" attached hereto) multiplied by the Face Amount of a Purchased Account on the day of purchase

   1.4 "Advance Rate" - See Exhibit "B" attached hereto.

   1.5 "Assignment Sheet" - a form(s) wherein Purchaser acknowledges its purchase and Seller's assignment of Accounts offered by Seller for purchase under the terms of this Agreement

   1.6 "Avoidance Claim" - any claim that any payment received by Purchaser is avoidable under the Bankruptcy Code or any other debtor relief statute

   1.7 "Base Fees" – Administrative Fee, Incremental Fee, Daily Fee and Late Fee

   1.8 "Chosen State" - Ohio

   1.9 "Clearance Period" - the time frame before which Purchaser has use of any funds received; for administrative purposes, this date shall be set at 1 business day.

   1.10 "Closed" - a Purchased Account is closed upon receipt of full payment by Purchaser from a Payor or from the Seller (including its being charged to the Reserve Account)

   1.11 "Collateral"- all Sellers' now owned and hereafter acquired Accounts, Chattel Paper, Inventory, Equipment, Instruments, Deposit Accounts, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles

   1.12 "Daily Fee" – the "Daily Fee Percentage" (as defined in Exhibit "B" attached hereto) multiplied by the Face Amount of a Purchased Account that remains unpaid, in whole or in part, on the "Daily Fee Accrual Date" (as set forth in Exhibit "B" attached hereto), and for each day until the Purchased Account is Closed

   1.13 "Eligible Account" - an Account that is acceptable for purchase as determined by Purchaser in the exercise of its reasonable sole credit or business judgment

   1.14 "Events of Default" - see Section 17.1

   1.15. "Exposed Payments" – payments received by Purchaser from or for the account of a Payor that has become subject to a bankruptcy proceeding, to the extent such payments cleared the Payor's deposit account within ninety days of the commencement of said bankruptcy case

   1.16 "Face Amount" - the face amount due on an Account at the time of purchase

   1.17 "Incremental Fee" – the Incremental Fee Percentage (as defined in Exhibit "B" attached hereto) multiplied by the Face Amount of each Purchased Account which remains unpaid, in whole or in part, on the "Incremental Fee Accrual Date(s), which is defines as a specific day following the Purchase Date or Invoice Date (whichever is earlier) as set forth in Exhibit "B" attached hereto

   1.18 "Invoice" - the document that evidences or is intended to evidence an Account   Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates

   1.19 "Invoice Date" – the date on which Seller, in the ordinary course of business, prepared the Invoice subsequent to the performance of labor and/or services rendered by Seller for Payor.

   1.20. "Late Fee" – the "Late Fee Percentage" (as set forth in Exhibit "B" attached hereto) multiplied by the Face Amount of each Purchased Account which remains unpaid, in whole or in part, on the Late Payment Date for each day until the Purchased Account is closed   "Late Payment Date" is defined as a number of days from Invoice

Initials: JB [illegible]

**EXHIBIT A**

Page 1

Date (as set forth in Exhibit "B"), unless the indebtedness on the Account becomes accelerated at the occurrence of an Event of Default pursuant to Paragraph 16.3.1 of the within Agreement

1.21. "Minimum Billing" - $5,000.00 per week.

1.22 "Obligations" - all present and future obligations owing by Seller to Purchaser whether arising hereunder or otherwise, and whether arising before, during or after the commencement of any Bankruptcy Case in which Seller is a Debtor

1.23 "Parties" - Seller and Purchaser

1.24 "Payor" - An Account Debtor or other obligor on an Account, or entity making payment thereon for the account of such party

1.25. "Purchase Date" - the date on which Seller has been advised in writing that Purchaser has agreed to purchase and administer an Account as evidenced by Seller's receipt of the Assignment Sheet notating the Schedule of Accounts purchased by Purchaser or when funds are received by Seller, whichever is earlier

1.26 "Purchase Price" - the Face Amount of a Purchased Account less the Administration Fee

1.27 "Purchased Accounts" - Accounts purchased hereunder which have not been Closed

1.28. "Repurchased" - an Account has been repurchased when Seller has paid to Purchaser the then unpaid Face Amount plus all unpaid Base Fees to date due to Seller

1.29 "Required Reserve Amount" the sum of the Reserve Percentage multiplied by the Face Amount of Purchased Accounts, plus the Special Reserve Amount

1.30. "Reserve Account" - a bookkeeping account on the books of the Purchaser representing an unpaid portion of the Purchase Price, maintained by Purchaser to ensure Seller's performance with the provisions hereof

1.31 "Reserve Shortfall" - the amount by which the Reserve Account is less than the Required Reserve Amount

1.32 "Schedule of Accounts" - a form(s) approved by Purchaser from time to time wherein Seller lists such of its Accounts as it requests that Purchaser purchase under the terms of this Agreement.

1.33 "Special Reserve Amount" – the amount that Purchaser may from time to time establish and revise in good faith to reflect events, conditions, contingencies or risks which, as determined by Purchaser in good faith which may affect the collectability of Purchased Accounts or which may reflect adversely upon the adequacy of the Reserve Account.

1.34 "Term" – see Exhibit "B"

1.35 "Termination"

    1.35.1 "Complete Termination" – Complete termination occurs upon satisfaction of the following conditions:

        1.35.1.1 Payment in full of all obligations of Sellers to Purchaser

        1.35.1.2. If Purchaser has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Seller, acknowledgement from any beneficiaries thereof that Purchaser or any other issuer has no outstanding direct or contingent liability therein

        1.35.1.3 Seller has executed and delivered to Purchaser a General Release in the form of Exhibit 1.36.1.3 attached hereto

    1.35.2 "Early Termination Date" – see Section 20.1 hereof

    1.35.3 "Early Termination Fee" – the average monthly Base Fees earned by Purchaser for the three months having the highest total Base Fees throughout the previous twelve months, multiplied by the number of months (or portions thereof) between the Early Termination Date and end of the current Term

2 **Sale; Purchase Price; Billing**

2.1 Assignment and Sale

2.1.1 Seller shall offer to sell exclusively to Purchaser as absolute owner, with full recourse, all of Seller's Accounts and list same from time to time on Seller's Schedules of Accounts

2.1.2 Each Schedule of Accounts shall be accompanied by such documentation supporting and evidencing the Account, as Purchaser shall from time to time request.

2.1.3 Purchaser may, but need not purchase from Seller such Accounts as Purchaser determines to be Eligible Accounts.

2.1.4 Purchaser shall pay the Purchase Price less the Reserve amount, of any Purchased Account, less any amounts due to Purchaser from Seller, including, without limitation, any amounts due to or on behalf of Seller under Section 3.1 hereof or pursuant to the "Services Exhibit" attached hereto, whereupon the Accounts shall be deemed purchased hereunder

2.2 Billing. Purchaser may send a monthly statement to all Payors itemizing their account activity during the preceding billing period and in order to notify said Payors of the proper remittance location Purchaser may send additional notices as deemed necessary at Purchaser's discretion  All Payors will be instructed to make payments to Purchaser with remittance advice to "Receivables Management Company for the benefit of Eagle Personnel, Inc." and sent to PO Box 931974, Cleveland, Ohio 44193  Further, all invoices issued by Eagle Personnel, Inc shall include the following statement:

> This account receivable has been assigned to and is owned by or subject to a security interest of Advance Payroll Funding LTD. and is payable only in United States Dollars  **All payments shall be made payable to Receivables Management Company F/B/O  Eagle Personnel, Inc. and sent to Post Office Box 931974 Cleveland, Ohio 44193**

3 **Reserve Account.**

3.1 Seller shall pay to Purchaser on demand the amount of any Reserve Shortfall  The balance due and owing shall constitute indebtedness which is immediately due and payable by Seller to Purchaser  Any such indebtedness shall bear fees at the rate of 2.95% per month until paid

3.2 Purchaser shall pay to Seller any amount by which the Reserve Account exceeds the Required Reserve Amount by the end of the next full Accounting Period.

3.3 Purchaser may charge the Reserve Account with any Obligation

3.4 Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account;

3.5 Purchaser may establish and adjust from time to time a Special Reserve Amount:

3.5.1 Without notice to Seller, so long as the Special Reserve Amount is not more than twenty percent of the unpaid Face Amount of Purchased Accounts at the time of its creation or adjustment, or

3.5.2 On two business days notice in all other cases

3.6 Purchaser may retain the Reserve Account until Complete Termination

4 **Exposed Payments**  Upon termination of this Agreement Seller shall pay to Purchaser (or Purchaser may retain), to hold in a non-segregated non-interest bearing account the amount of all Exposed Payments (the "Preference Reserve")  Purchaser may charge the Preference Reserve with the amount of any Exposed Payments that Purchaser pays to the bankruptcy estate of the Payor that made the Exposed Payment, on account of a claim asserted under Section 547 of the Bankruptcy Code  Purchaser shall refund to Seller from time to time that balance of the Preference Reserve for which a claim under Section 547 of the Bankruptcy Code can no longer be asserted due to the passage of the statute of limitations, settlement with the bankruptcy estate of the Payor or otherwise

5 **Authorization for Purchases**.  Subject to the terms and conditions of this Agreement, Purchaser is authorized to purchase Accounts upon telephonic, facsimile or other instructions received from anyone purporting to be an officer, employee or representative of Seller

6 **Fees and Expenses**  Seller shall pay to Purchaser:

6.1 **Administrative Fee**  The Administrative Fee, on the day on which a Purchased Account is purchased

Initials: _JB_ _KL_

6.2 **Incremental Fee** The Incremental Fee, on the day on which a Purchased Account is Closed

6.3 **Daily Fee** The Daily Fee, on the day on which a Purchased Account is Closed

6.4 **Late Fee.** The Late Charge, on demand, on all past due amounts due from Seller to Purchaser hereunder

7 <u>Repurchase Of Accounts</u> Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof, together with any unpaid fees relating to the Purchased Account on demand, or, at Purchaser's option, by Purchaser's charge to the Reserve Account Notwithstanding any termination of this Agreement, so long as any amounts owing to Purchaser under this Agreement remain unpaid, any payments on Repurchased Accounts and other unpaid Accounts Receivable will continue to be collected by Purchaser as collecting agent for Seller and as security for any obligations of Seller due or to become due under this Agreement Upon receipt by Seller of any amounts tendered in payment of such Repurchased Accounts and other Accounts Receivable, the full amount thereof shall be remitted by Seller to Purchaser to assure proper accounting of the payment. Purchaser will thereafter forward to Seller with the next weekly earnings report Seller's share of such billing, less any adjustments, deductions or offsets permitted under this Agreement The circumstances whereby Purchaser may require that Seller repurchase a Purchased Account include the following:

7.1 Any Purchased Account, the payment of which has been disputed by the Payor or the Account Debtor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute;

7.2 Any Purchased Account regarding which Seller has breached any warranty as set forth in the Section 15.4

7.3 Any Purchased Account owing from an Account Debtor or Payor which (i) in Purchaser's reasonable credit judgment has become insolvent or (ii) which has indicated an inability or unwillingness to pay the Purchased Account when due;

7.4 All Purchased Accounts upon the occurrence of an Event of Default, or upon the termination date of this Agreement; and

7.5 Any Purchased Account that remains unpaid beyond the Late Payment Date

8 <u>Security Interest</u>

8.1 As collateral securing the Obligations, Seller grants to Purchaser a continuing first priority security interest in the Collateral.

8.2 Notwithstanding the creation of this security interest, the relationship of the parties shall be that of Purchaser and Seller of accounts, and not that of lender and borrower

9. <u>Clearance Period</u> For all purposes under this Agreement, payments will not be credited to Purchaser until the Clearance Period has elapsed

10. <u>Authorization to Purchaser</u>

10.1 Seller irrevocably authorizes Purchaser at Seller's expense, to exercise at any time any of the following powers until all of the Obligations have been paid in full:

10.1.1 Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all proceeds of any Collateral securing the Obligations or the proceeds thereof;

10.1.2 Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon Purchaser's Accounts;

10.1.3 Pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in any assets of Seller, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

10.1.4 File in the name of Seller or Purchaser or both:

10.1.4.1 Mechanics lien or related notices, or

10.1.4.2 Claims under any payment bond, in connection with goods or services sold by Seller in connection with the improvement of realty, or

10.1.4.3 A Power of Attorney which enables Purchaser to represent Seller before the Internal Revenue Service (including Internal Revenue Service Forms 2848 and 8821);

Initials: _JB_ _BdL_ Page 4

10.1.5 Notify any Payor obligated with respect to any Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser;

10.1.6 Communicate directly with Seller's Payors to verify the amount and validity of any Account created by Seller

10.1.7 After an Event of Default:

10.1.7.1 Change the address for delivery of mail to Seller and to receive and open mail addressed to Seller;

10.1.7.2 Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Accounts and discharge or release any account debtor or other obligor (including filing of any public record releasing any lien granted to Seller by such account debtor), without affecting any of the Obligations;

10.1.8 File any initial financing statements and amendments thereto that:

10.1.8.1 Indicate the collateral as all assets of the Seller or words of similar effect, regardless of whether any particular asset comprised in the collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail;

10.1.8.2 Contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment, including (i) whether the Seller is an organization, the type of organization, and any organization identification number issued to the Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the collateral relates; and

10.1.8.3 Contain a notification that the Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortuously interfering with Purchaser's rights;

10.1.8.4 Advises third parties that any notification of Seller's Account Debtors will interfere with Purchaser's collection rights

10.2 Seller authorizes Purchaser to accept, endorse and deposit on behalf of Seller any checks tendered by an account debtor "in full payment" of its obligation to Seller  Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the Uniform Commercial Code, or otherwise

11 **ACH Authorization**.  In order to satisfy any of the Obligations, Seller authorizes Purchaser to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller under the limited circumstances whereby Purchaser sent funds to Seller in error, or in the event that funds were fraudulently handled by Seller

12 **Covenants By Seller**.

12.1 Seller shall not, without the prior written consent of Purchaser in each instance, (a) grant any extension of time for payment of any of its Accounts, (b) compromise or settle any of its Accounts for less than the full amount thereof, (c) release in whole or in part any Payor, or (d) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of the Accounts

12.2 From time to time as requested by Purchaser, Purchaser or its designee shall have access, during reasonable business hours if prior to an Event of Default and at any time if on or after an Event of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Event of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser or its designee to make copies of such books and records or extracts therefrom as Purchaser may request  Without expense to Purchaser, Purchaser may use any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of accounts and realization on other Collateral as Purchaser, in its sole discretion, deems appropriate  Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Seller

12.3. Each guarantor, principal, and/or director, individually, undertakes to assure Purchaser that each and every Customer of Seller for who accounts are offered purchase, are independent, non-related business enterprises. Non-related means that Seller, its principals, officers, relations, employees or agent have no direct or indirect ownership, interest or affiliation

12.4. Seller agrees, at its' expense and as a condition precedent to Purchaser's duties under Paragraph 2 of the within Agreement, to report and pay in a timely manner to the appropriate agencies all Workers' Compensation Premiums. Throughout the term of this Agreement and any extension thereof, Seller will furnish Purchaser with current certificates (and proof of payment) of insurance from the appropriate insurers certifying that Workers' Compensation Insurance has been issued in the amounts required by law covering the Employees for all States where Seller provides services. Additionally, Seller agrees to add Purchaser to its policy as an additional insured for purposes of allowing Purchaser to receive all correspondence related to Seller's Workers' Compensation Policy

12.5. Seller, unless otherwise stated in a "Services Exhibit" related to the within Agreement, shall pay when due all payroll and other taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require. Except as otherwise provided for in a subsequent Services Addendum, Seller agrees to provide Purchaser with quarterly copies of its proof of payment on its payroll taxes no more than thirty (30) days following their due date, and further, with a proof of payment on its unemployment taxes no later than February 15 following the applicable taxable year

12.6 Seller and each guarantor shall provide to Purchaser, upon Purchaser's written request, internal or audited financial statements on a quarterly basis, copies of annual corporate tax returns and annual updates to personal financial statements and personal tax returns. Additionally, Purchaser maintains the right to conduct an independent audit of Seller's business at Seller's expense

12.7 Seller shall not create, incur, assume or permit to exist any lien upon or with respect to any assets in which Purchaser now or hereafter holds a security interest

12.8 Seller agrees to operate the Business in accordance with this Agreement and in full compliance with all applicable federal, state and local laws, rules and regulations

12.9 Notwithstanding Seller's obligation to pay the Misdirected Payment Fee, Seller shall pay to Purchaser on the next banking day following the date of receipt by Seller the amount of any payment on account of a Purchased Account

13. **Avoidance Claims.** Seller shall indemnify Purchaser from any loss arising out of the assertion of any Avoidance Claim and shall pay to Purchaser on demand the amount thereof. Seller shall notify Purchaser within two business days of it becoming aware of the assertion of an Avoidance Claim. This provision shall survive termination of this Agreement

14 **Account Disputes** Seller shall notify Purchaser promptly of and, if requested by Purchaser, will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense. Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "Resolve") the dispute upon such terms, as Purchaser in its sole discretion deem advisable, for Seller's account and risk and at Seller's sole expense. Upon the occurrence of an Event of Default Purchaser may Resolve such issues with respect to any Account of Seller

15 **Representation and Warranties** Seller represents and warrants that:

15.1 It is fully authorized to enter into this Agreement and to perform hereunder;

15.2 This Agreement constitutes its legal, valid and binding obligation; and

15.3 Seller is solvent and in good standing in the jurisdiction of its organization

15.4 The Purchased Accounts are and will remain:

15.4.1. Bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business;

15.4.2. Unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation;

15.4.3. Not sales to any entity that is affiliated with Seller directly or indirectly or in any way not an "arms length" transaction.

15 5 Seller has not received notice or otherwise learned of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any applicable account debtor regarding Purchased Accounts

16 **Penalties**  In the event of the following, Seller shall pay to Purchaser:

16 1 Misdirected Payment Fee  The fee (15% of the amount of any payment) due immediately upon its accrual for any payment on account of a Purchased Account which has been received by Seller and not delivered in kind to Purchaser on the next business day following the date of receipt by Seller

16 2 Missing Notation Fee  The fee (15% of the Face Amount) on any Invoice that is sent by Seller to a Payor that does not contain the notice as required by Section 2 2 hereof, which amount is payable on demand upon discovery by Purchaser

16 3 Termination Fee  The Termination Fee, on the Termination Date, in the event that Seller terminates this Agreement other than at the end of a Term, based upon the computation set forth in Part 1 35 3 of the within Agreement

16 4 Unsold Accounts Fee.  On demand, an Unsold Accounts Fee on any Accounts created by Seller and not offered, unless agreed to in writing by Purchaser, for sale to Purchaser as set forth in Section 2 1 1, computed as the fees which Purchaser would have earned thereon, based on the irrebuttable assumption that such Accounts would have been Eligible Accounts

17 **Default.**

17 1 Events of Default  The following events will constitute an Event of Default hereunder: (a) Seller defaults in the payment of any Obligations or in the performance of any provision hereof or of any other agreement now or hereafter entered into with Purchaser, or any warranty or representation contained herein proves to be false in any way, whether material or immaterial, (b) Seller or any guarantor of the Obligations becomes subject to any debtor-relief proceedings, (c) any such guarantor fails to perform or observe any of such Guarantor's obligations to Purchaser or shall notify Purchaser of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever, (d) Upon Purchaser's learning of any material adverse change in Seller's business or in the financial health of the Seller's guarantors, (e) failure to meet the Minimum Billing requirement for any 4-week period once more than six (6) months have elapsed from the beginning of the Term, (f) Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations, (g) Seller grants a security interest in its Collateral to another creditor and/or the Collateral of Seller is encumbered by a party other than Purchaser

17.2. Waiver of Notice.  PURCHASER'S FAILURE TO CHARGE OR ACCRUE INTEREST OR FEES AT ANY "DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY PURCHASER OF ITS CLAIM THERETO.

17 3 Effect of Default

17 3 1. Upon the occurrence of any Event of Default, in addition to any rights Purchaser has under this Agreement or applicable law, Purchaser may immediately terminate this Agreement, at which time all Obligations shall immediately become due and payable without notice

17 3 2 The Late Charge shall accrue and is payable on demand on any Obligation not paid when due

18 **Account Stated**  Purchaser shall render to Seller a statement setting forth the transactions arising hereunder  Each statement shall be considered correct and binding upon Seller as an account stated, except to the extent that Purchaser receives, within sixty (60) days after the mailing of such statement, written notice from Seller of any specific exceptions by Seller to that statement, and then it shall be binding against Seller as to any items to which it has not objected

19 **Amendment and Waiver**  Only a writing signed by all parties hereto may amend this Agreement  No failure or delay in exercising any right hereunder shall impair any such right that Purchaser may have, nor shall any waiver by Purchaser hereunder be deemed a waiver of any default or breach subsequently occurring  Purchaser's rights and remedies herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have

20 **Termination; Effective Date**

20 1 This Agreement will be effective on the date it is signed by the Parties, shall continue for the Term, and shall be automatically extended for successive Terms unless Seller shall provide at least sixty (60) days but no

Initials: JB KL

more than ninety (90) days before the end of the then current Term via written notice to Purchaser's General Counsel of its intention to terminate whereupon this Agreement shall terminate at the end of the Term

20.2 Seller may only terminate this Agreement as of the end of the next maturing Term

20.3 Early Termination Should Seller terminate the Agreement in any fashion other than as set forth in Part 20.1, Seller shall provide at least sixty (60) days prior written notice from the date set forth in said notice (an "Early Termination Date") In the event of an Early Termination, will be subject to the Fee as set forth in Part 1 35 of the within Agreement

21 **No Lien Termination without Release** In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Complete Termination has occurred.  **Seller understands that this provision constitutes a waiver of its rights under §9-513 of the UCC.**

22. **Conflict** Unless otherwise expressly stated in any other agreement between Purchaser and Seller, if a conflict exists between the provisions of this Agreement and the provisions of such other agreement, the provisions of this Agreement shall control

23 **Severability** In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

24 **Enforcement** This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each party with a complete opportunity to be reviewed by their respective counsel, and shall be construed accordingly

25 **Relationship of Parties** The relationship of the parties hereto shall be that of Seller and Purchaser of Accounts, and Purchaser shall not be a fiduciary of the Seller, although Seller may be a fiduciary of the Purchaser

26 **Attorneys' Fees/ Out-of-Pocket Expenses** Seller agrees to reimburse Purchaser on demand for:

26 1 The actual amount of all costs and expenses, including attorneys' fees, credit card processing fees and/or any collections costs incurred by Purchaser, which Purchaser has incurred or may incur in:

26.1.1 Negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith;

26 1 2. Any way arising out of this Agreement;

26 1.3 Protecting, preserving or enforcing any lien, security or other right granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims;

26 2 The actual costs, including photocopying (which, if performed by Purchaser's employees, shall be at the rate of $ 10/page), travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process in any way relating to Seller  This provision shall survive termination of this Agreement

26.3 The actual amount of all costs and expenses, including attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan there under.

27 **Confidentiality.** Seller agrees that the terms, the Purchaser's business methods and trade secrets, and any and all other records and information clearly and specifically identified by Purchaser as confidential will be held by Seller in strict confidence and treated as the confidential property of Purchaser  Seller will not, except in the due performance of its duties or the enforcement of its rights under this Agreement, disclose any of the foregoing to any Person, unless specifically authorized to do so in writing by Purchaser or unless required by law  Purchaser agrees that any and all records and information clearly and specifically identified by Seller as confidential will be held by Purchaser in strict confidence and treated as the confidential property of Seller  Purchaser will not, except in the due performance of its duties or the enforcement of its rights under this Agreement, disclose the records and information of Seller to any Person, unless specifically authorized to do so in writing by Seller or unless required by law

28 **Indemnification**   Seller agrees to indemnify Purchaser against and save Purchaser harmless from any and all manner of suits, claims, liabilities, demands and expenses (including reasonable attorneys' fees and collection costs) resulting from or arising out of this Agreement, whether directly or indirectly, including the transactions or relationships contemplated hereby (including the enforcement of this Agreement), and any failure by Seller to perform or observe its obligations under this Agreement

29 **Entire Agreement**   No promises of any kind have been made by Purchaser or any third party to induce Seller to execute this Agreement   No course of dealing, course of performance or trade usage, and no parol evidence of any nature, shall be used to supplement or modify any terms of this Agreement

30 **Choice of Law**   This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the State of Ohio

31 **Arbitration, Jurisdiction and Venue**   Purchaser shall have the right to elect to have any dispute or disagreement between the parties arising out of or relating to this Agreement, or the transactions or relationships contemplated hereby, resolved by arbitration under the commercial arbitration rules then obtaining of the American Arbitration Association (or equally accredited arbitration organization), by a single arbitrator, selected by both Purchaser and Seller, which arbitration shall be conducted in Cuyahoga County, Ohio, where Purchaser has its principal offices and where Purchaser has accepted this Agreement and will perform its obligations hereunder   The arbitrator's decision shall be final and binding, and any court of competent jurisdiction may enter judgment upon the award in accordance with applicable law   The parties acknowledge and agree that resolution of any disputes or disagreements by arbitration is at the sole and exclusive option of Purchaser   Seller may elect to settle any dispute in a court of law in the chosen forum; Seller further submits to the jurisdiction of the Courts of the State of Ohio, with venue at the Cuyahoga County Court of Common Pleas, Cuyahoga County, Ohio.   In the event of removal to a Federal Court, such court shall be the District Court for the Northern District of Ohio, Eastern Division   Seller expressly waives the jurisdiction of any other court, and acknowledges and agrees that this Agreement, without more, shall be sufficient to sustain the dismissal of an action commenced by Seller in any court other than specified in this Agreement.   Seller agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue

32 **Jury Trial Waiver.**   In recognition of the higher costs and delay which may result from a jury trial, the parties hereto waive any right to trial by jury of any claim, demand, action or cause of action (A) arising hereunder or, (B) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect hereto, in each whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and each party further waives any right to consolidate any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived; and each party hereby agrees and consents that any such claim, demand, action or cause of action shall be decided by court trial without a jury, and that any party hereto may file an original counterpart or a copy of this section with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury

33 **Service of Process**.   Seller agrees that Purchaser may effect service of process upon Seller by regular mail at the address set forth in this Agreement, or at the option of Purchaser if Seller is a Registered Organization, by service upon Seller's agent for the service of process

34 **Assignment**   Only Purchaser may assign its rights and delegate its duties hereunder   Upon such assignment, Seller shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Purchaser

35 **Counterparts**   This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument   Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement

36 <u>Notice.</u>

36 1 All notices required to be given to any party other than Purchaser shall be deemed given upon the first to occur of (i) deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means to a receiver under the control of such party, or (iii) actual receipt by such party or an employee or agent of such party  All notices to Purchaser shall be deemed given upon actual receipt by a responsible officer of Purchaser

36 2 For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such party may in writing hereafter indicate:

**SELLER:**   **EAGLE PERSONNEL, INC.**

Address:    6206 Southridge Drive
            Plainfield, Illinois  60586
Officer:    Brian Rasmussen
Fax Number: 630-679-6823

**PURCHASER: ADVANCE PAYROLL FUNDING LTD.**

Address:    3401 Enterprise Parkway, Suite 5th Floor
            Cleveland, OH 44122
Officer:    Jeremy L. Bilsky, Esq
Fax Number: 216-831-8819

IN WITNESS WHEREOF, the Parties have executed this agreement on the day and year first above written

**SELLER:**                                   Eagle Personnel, Inc

                                              By: _____
                                              Printed Name:  Brian Rasmussen
                                              Title:         President

Notary Acknowledgement for Seller:

STATE OF __IL_____ )

COUNTY OF __Will_____ )

I, Maricela Zettergren, a Notary Public for said County and State, certifies that Brian Rasmussen personally came before me this day and acknowledged that he is President for Seller, Eagle Personnel, Inc , an Illinois corporation and that by authority duly given as officers of the company, the instrument was signed in its name by him

Witness my hand and official seal, this __31st__ day of __Aug__, 20__07__

(Official Seal) _____Maricela Zettergren_____
               Notary Public

"OFFICIAL SEAL"
MARICELA ZETTERGREN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires July 30, 2008

My commission expires: __July 30_____ 20 __08__

**PURCHASER:**                                Advance Payroll Funding, Ltd

                                              By: _____
                                              Name:  Daniel P. Goldstein
                                              Title: Director of Operations
                                              Date:  9/7/07

Initials: _JB_ __                                                                   Page 10

**EXHIBIT 1.35.1.3**

## GENERAL RELEASE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and adequacy of which are hereby acknowledged, the undersigned and each of them (collectively "Releasor") hereby forever releases, discharges and acquits **Advance Payroll Funding Ltd.** ("Releasee"), its parent, directors, shareholders, agents and employees, of and from any and all claims of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore existing, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, to the extent that they arise out of or are in way connected to or are related to that certain Factoring and Security Agreement dated August 30, 2007

    Releasor agrees that the matters released herein are not limited to matters which are known or disclosed, and the Releasor waives any and all rights and benefits which it now has, or in the future may have.

    Releasor acknowledges that factual matters now unknown to it may have given or may hereafter give rise to Claims which are presently unknown, unanticipated and unsuspected, and it acknowledges that this Release has been negotiated and agreed upon in light of that realization and that it nevertheless hereby intends to release, discharge and acquit the Releasee from any such unknown Claims

    Acceptance of this Release shall not be deemed or construed as an admission of liability by any party released

    Releasor acknowledges that either (a) it has had advice of counsel of its own choosing in negotiations for and the preparation of this release, or (b) it has knowingly determined that such advice is not needed

DATED: 31 Aug 07

Individual Releasor:

_____
Brian Rasmussen, Individually


Entity Releasor:

By: _____
Printed Name:    Brian Rasmussen
Title:           President

Initials: _____                                                                                         Page 11



Exhibit "B"

The Fee Structure for the within Factoring and Security Agreement is as follows:

| | |
|---|---|
| Administrative Fee Percentage (§ 1 3) | 1 25% |
| Advance Rate (§ 1 4) | 85% |
| Daily Fee Percentage (§ 1 12) | 067% |
| Daily Fee Accrual Date (§ 1 12) | On day 31 following Invoice Date |
| Incremental Fee Percentage (§ 1 17) | 5% |
| Incremental Fee Accrual Date (§ 1 17) | On the 30th day following Invoice Date |
| Late Charge Percentage (§ 1 20) | 03% |
| Late Payment Date (§ 1 21) | 90 days following Invoice Date |
| Term (§ 1 35) | 18 Months |

Initials: _JB bm_

# GUARANTY

In order to induce Purchaser to execute and perform the foregoing Agreement, the undersigned, each a party representing himself as having an economic interest in Seller, hereby personally, absolutely and unconditionally, jointly and severally, guarantee to Purchaser the full and timely payment, and performance and observance, by Seller of its obligations under this Agreement. This Guaranty is a guaranty of performance and payment and not of collection, and each of the undersigned understands that Purchaser may proceed to enforce its rights hereunder against the undersigned or any of them until indefeasibly paid in full, without being obligated to first or concurrently proceed against Seller under the foregoing Agreement, or any other of the undersigned, under this Guaranty

Individually and Personally _B. Rasmussen_
Printed Name                  Brian Rasmussen
Address                       6206 Southridge Drive
                              Plainfield, Illinois  60544
Social Security Number        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

Notary Acknowledgement for Guarantor:

STATE OF __IL__ )

COUNTY OF __Will__ )

I, __Maricela Zettergren__, a Notary Public for said County and State, certify that Brian Rasmusssen personally came before me this day, to be the signer of the above instrument, and he acknowledges that he signed it

Witness my hand and official seal, this __31st__ day of __Aug__, 20__07__

(Official Seal)

_Maricela Zettergren_
Notary Public

"OFFICIAL SEAL"
MARICELA ZETTERGREN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires July 30, 2008

My commission expires: __July 30__, 20__08__

Initials: _JB BCR_                                                                 Page 13

# GUARANTY

In order to induce Purchaser to execute and perform the foregoing Agreement, the undersigned, each a party representing himself as having an economic interest in Seller, hereby personally, absolutely and unconditionally, jointly and severally, guarantee to Purchaser the full and timely payment, and performance and observance, by Seller of its obligations under this Agreement  This Guaranty is a guaranty of performance and payment and not of collection, and each of the undersigned understands that Purchaser may proceed to enforce its rights hereunder against the undersigned or any of them until indefeasibly paid in full, without being obligated to first or concurrently proceed against Seller under the foregoing Agreement, or any other of the undersigned, under this Guaranty.

Individually and Personally _[signature]_
Printed Name          Ellen Rasmussen
Address              6206 Southridge Drive
                     Plainfield, Illinois 60544
Social Security Number   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

Notary Acknowledgement for Guarantor:

STATE OF __ILLINOIS__ )
COUNTY OF __WILL__ )

I, Maricela Zettergren, a Notary Public for said County and State, certify that Ellen Rasmusssen personally came before me this day, to be the signer of the above instrument, and she acknowledges that she signed it

Witness my hand and official seal, this __31__ day of __August__, 20__07__

(Official Seal)

_[signature]_
Notary Public

"OFFICIAL SEAL"
MARICELA ZETTERGREN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires July 30, 2008

My commission expires: __July 30__, 20__08__